**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PAMELA JOY RABER,** | : | **Civil No. 1:15-CV-195** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **v.** | : | |
| | : | |
| **CAROLYN W. COLVIN,** | : | |
| **Commissioner of Social Security** | : | |
| | : | |
| **Defendant.** | : | |

## <u>MEMORANDUM OPINION</u>

This is an action brought by Plaintiff Pamela Raber, an adult individual who resides in the Middle District of Pennsylvania, under 42 U.S.C. §405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Ms. Raber's application for disability insurance benefits under Title II of the Social Security Act. This matter has been assigned to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 14; Doc. 15). For the reasons expressed herein, the Commissioner's decision is **affirmed**, and Ms. Raber's request for relief is **denied**.

I.    **Background and Procedural History**

A.    **Medical history**

On May 23, 2011, Ms. Raber filed an application for disability insurance benefits.  In her application, Ms. Raber alleged that the following conditions made it impossible for her to work as of March 1, 2011:  multiple heart attacks, heart disease, type 2 diabetes. (Admin. Tr. 103).  Ms. Raber, who has been diagnosed with coronary artery disease and diabetes mellitus, alleges that these impairments result in extreme symptoms that compromise her ability to work.  Specifically, Ms. Raber testified that, following the insertion of stents to clear blockages in her heart in March and May 2011, she was unable to exert herself for fear of triggering further cardiac complications.  Ms. Raber's cardiac symptoms are compounded by her diabetes mellitus and its symptoms, which include lower extremity peripheral neuropathy and diabetic retinopathy.  During her hearing, Ms. Raber's primary complaints were that she is easily fatigued with exertion, experiences constant widespread musculoskeletal pain, numbness in her lower extremities when sitting or standing for as little as forty-five minutes, and has blurred vision when her sugars are high.  She also alleges that these limitations have greatly reduced her ability to engage in  her typical activities of daily living.  For example, Ms. Raber testified that she cannot lift or carry anything, but admitted that she does lift items from a grocery store shelf to place them

2

in her shopping cart.  She relies on the assistance of others to carry her groceries to the car, and to unload the groceries from her car when she returns home.  (Admin. Tr. 48).  She reported that any attempt to lift or carry items triggers chest pain.  (Admin. Tr. 49).  Ms. Raber also reported that, she needs to stop and rest at times before she completes a particular task due to fatigue.  (Admin. Tr. 49).

During her hearing, Ms. Raber testified that her cardiac health continues to deteriorate.  She reported that her doctors have discovered five more blockages in her heart that may require additional surgeries, (Admin. Tr. 49), however the record seems to reflect no evidence corroborating the existence of additional blockages. Although Ms. Raber testified that she sees a cardiologist, Abigail Shields, for regular check-ups, the record in this case reveals that Ms. Shields is simply a certified registered nurse practitioner.  Further, the most recent examination with CRNP Shields available in the record before the ALJ hearing took place on June 12, 2011, did not confirm Ms. Raber's claims concerning the extent or severity of her impairments.  During this examination CRNP Shields noted that since Ms. Raber's May 2011 stent placement, she was doing well.  Ms. Raber denied shortness of breath and chest pain, and reported that her normal daily activities include cleaning and helping to care for her grandchildren.  Ms. Raber also told CRNP Shields that she was working part time at a home health agency.  Further, while Ms. Raber did complain

of some medication side-effects including fatigue and muscle aches, CRNP Shields adjusted Ms. Raber's medications to minimize her side-effects and there are no treatment notes that comment on whether these adjustments had the desired effect.

The medical records also reflect that Ms. Raber's diabetes care is followed by her primary care physician Dr. Lori  Masteller, and that Ms. Raber had seen an endocrinologist in the past, but was discharged from care in December 2009.  The most recent treatment records from Dr. Masteller indicated that Ms. Raber's sugars were high, and that she was positive for diabetic retinopathy. (Admin. Tr. 427).  Labs dated August 2011, revealed that although Ms. Raber's sugars were up, her "overall A1c was excellent."  (Admin. Tr. 433).  On that date, her estimated average glucose was 157, and her A1c level was 7.1.  (Admin. Tr. 440).

During the evaluation of her claims at the initial level of administrative review, Ms. Raber was evaluated by nontreating medical source, David Yang Go, ("Dr. Yang Go").  (Admin. Tr. 448-450).  Dr. Yang Go noted that Ms. Raber was a noncompliant diabetic and smoker who had multiple risk factors for recurrence of myocardial infarction due to her treatment noncompliance.  Id.  Dr. Yang Go also observed that although Ms. Raber complains of muscle pain, it was not noted during examination. Id.  Dr. Yang Go assessed coronary artery disease status-post two stents with acute coronary syndrome and chronic angina, diabetes (non-compliant and in poor control),

tobacco use, and hypercholesterolemia.  Id.  In his accompanying medical source statement, Dr. Yang Go opined that Ms. Raber could:  lift or carry up to ten pounds; stand or walk for four hours with alternating sitting and standing; sit without limitation; push or pull objects within the weights prescribed for lifting and carrying; occasionally bend, kneel, stoop, crouch, and balance; and never climb.  (Admin. Tr. 451-52).  Nonexamining State agency medical consultant Mark Bohn ("Dr. Bohn") also assessed Ms. Raber's physical residual functional capacity.  Dr. Bohn assessed that Ms. Raber could:  occasionally lift or carry up to twenty pounds; frequently lift or carry up to ten pounds; stand and/or walk (with normal breaks) up to six hours per eight-hour workday; sit (with normal breaks) up to six hours per eight-hour workday; push or pull (e.g., operate hand or foot controls) within the same weight limits prescribed for her ability to lift and carry; occasionally climb ramps or stairs, balance, stoop, kneel, crouch, crawl; never climb ladders, ropes, or scaffolds; and work in environments free from concentrated exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, gasses, poor ventilation, and hazards.  (Admin. Tr. 62-64).

### B.     Administrative procedural history

Ms. Raber's claim was denied at the initial level of administrative review on October 7, 2011.  Ms. Raber then requested to have her claim evaluated by an Administrative Law Judge during a hearing.

After the initial denied of her claims, but shortly before her administrative hearing, Ms. Raber's treating neurologist, Uzzal Roy ("Dr. Roy"), wrote a two-sentence letter in which Dr. Roy opined that Ms. Raber could do "only sedentary work due to her medical condition." (Admin. Tr. 462).  Ms. Raber testified that she started seeing Dr. Roy three months before her February 2013 hearing. (Admin. Tr. 44).  No examination notes from Dr. Roy were included in the record before the ALJ. Dr. Roy did, however, submit an EMG interpreted by Dr. Edwin Aquino.  (Admin. Tr. 465).

On February 20, 2011, Ms. Raber appeared with her attorney at an administrative hearing before ALJ Michele Wolfe.  Impartial vocational expert Karen Kane ("VE Kane") also appeared and testified during the hearing.  On April 12, 2013, the ALJ denied Ms. Raber's claims in a written decision after she reached the conclusion that Ms. Raber retained the ability to engage in other work that exists in significant numbers in the national economy.  Ms. Raber sought review of the ALJ's decision from the Appeals Council of the Office of Disability Adjudication and

Review.  Her request for review was denied on December 15, 2014, making the ALJ's decision the Commissioner's final decision subject to judicial review by this Court.

Ms. Raber appealed the Commissioner's final decision by filing the complaint in this action on January 27, 2015.  (Doc. 1).  In her complaint, Ms. Raber alleges that the ALJ's decision is erroneous and contrary to the settled law, and requests that this Court reverse the decision of the Commissioner and enter an order awarding benefits. (Doc. 1, at 5).  The Commissioner filed her answer to Ms. Raber's complaint on April 10, 2015.  (Doc. 9).  In her answer, the Commissioner responds that the decision holding that Ms. Raber is not entitled to benefits is correct and in accordance with the law and regulations, and that the ALJ's findings of fact are supported by substantial evidence.  (Doc. 9 ¶16).  Together with her answer, the Commissioner submitted a certified copy of the administrative transcript.  (Doc. 10).  This matter has been fully briefed by the parties and is now ripe for decision.  (Doc. 11; Doc. 12).

## II.    Legal Standards

### A.    Substantial Evidence Review – The Role of This Court

When reviewing the Commissioner's final decision denying a Social Security claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. § 405(g); Johnson v. Comm'r of Soc. Sec., 529

F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D.Pa. 2012).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003). The question before this Court, therefore, is not whether Ms. Raber is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t

has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); <u>Burton v. Schweiker</u>, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); <u>see also</u> <u>Wright v. Sullivan</u>, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); <u>Ficca</u>, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

## B.    Initial Burdens of Proof , Persuasion and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); <u>see also</u> 20 C.F.R. §404.1505(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a).  To receive benefits under Title II of the Social Security Act, a claimant must also show that he or she contributed to the

insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.  42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.  20 C.F.R. §404.1520(a).  Under this process, the ALJ must sequentially determine:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §404.1520(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC.  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  <u>Burnett v. Comm'r of Soc. Sec.</u>, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); <u>see also</u> 20 C.F.R. §§404.1520(e), 404.1545(a)(1).  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §404.1545(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents

him or her in engaging in any of his or her past relevant work.  42 U.S.C. §423(d)(5);
20 C.F.R. §404.1512; Mason, 994 F.2d at 1064.

Once this burden has been met by the claimant, it shifts to the Commissioner
at step five to show that jobs exist in significant number in the national economy that
the claimant could perform that are consistent with the claimant's age, education,
work experience and RFC.  20 C.F.R. §404.1512(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic procedural and
substantive requisites.   Most significant among these legal benchmarks is a
requirement that the ALJ adequately explain the legal and factual basis for this
disability determination.  Thus, in order to facilitate review of the decision under the
substantial evidence standard, the ALJ's decision must be accompanied by "a clear
and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d
700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must
indicate which evidence was accepted, which evidence was rejected, and the reasons
for rejecting certain evidence. Id. at 706-707.  In addition, "[t]he ALJ must indicate
in his decision which evidence he has rejected and which he is relying on as the basis
for his finding." Schaudeck v. Com. of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

### C.    Guidelines for the Assessment of the Credibility of a Claimant's Allegations about Her Symptoms and Limitations

The regulations describe a two-step process  20 C.F.R. §404.1529.  First, the ALJ must consider whether the claimant has met his or her burden of showing that he or she has a medically determinable physical or mental impairment that could reasonably be expected to produce the symptoms alleged.   Once an underlying impairment has been shown, the ALJ reaches the second step of this process.  At the second step the ALJ must "evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities."  SSR 96-7p, 1996 WL 374186 at *2. "Whenever the individual's statements abut the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on the consideration of the entire case record."  Id.  In doing so, the ALJ must consider the following seven factors outlined in 20 C.F.R. §404.1529(c)(3): (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or symptoms; (3) precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication,

12

the claimant receives or has received for relief of pain or other symptoms; (6) any measures the claimant uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms that are brought to the ALJ's attention.   20 C.F.R. 404.1529(c)(3); SSR 96-7p, 1996 WL 374186 at*3.

In making a finding about the credibility of a claimant's statements, the ALJ need not totally accept or totally reject the individual's statements.  SSR 96-7p, 1996 WL 374186.  The ALJ may find all, some, or none of the claimant's allegations to be credible, or may find a claimant's statements about the extent of his or her functional limitations to be credible but not to the degree alleged.  Id.  Further, an ALJ's findings based on the credibility of a claimant are to be accorded great weight and deference, since an ALJ is charged with the duty of observing a witness' demeanor and credibility.  Frazier v. Apfel, No. 99-CV-715, 2000 WL 288246, at *9(E.D. Pa. Mar. 7, 2000)(quoting Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531(6th Cir. 1997)).

### D. Legal Benchmarks for the ALJ's Assessment of Medical Opinion Evidence

The Commissioner's regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect

judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairments(s), and [a claimant's] physical or mental restrictions.   20 C.F.R. §404.1527(a)(2).[1]   Regardless of its source, the ALJ is required to evaluate every medical opinion received.  20 C.F.R. §404.1527(c).

In deciding what weight to accord to competing medical opinions, the ALJ is guided by factors outlined in 20 C.F.R. §404.1527(c).  "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."  SSR 96-6p, 1996 WL 374180 at *2.  Treating sources have the closest ties to the claimant, and, therefore, their opinions generally entitled to more weight.  See 20 C.F.R. §404.1527(c)(2)("Generally, we give more weight to opinions from your treating

---

[1]Medical source opinions on issues that are dispositive of a case, e.g., whether a claimant is disabled, are reserved to the Commissioner and do not constitute medical opinions defined by 20 C.F.R. §404.1527(a)(2).  20 C.F.R. §404.1527(d). Furthermore, where a medical source opines that an individual is limited to "sedentary" work, or makes similar statements that appear to use terms set out in the Commissioner's regulations, the adjudicator must not assume that the medical source using the terms "sedentary" and "light" is aware of the Commissioner's definitions. SSR 96-5p, 1996 WL 374183 at *5.  Such opinions must never be ignored, and must be considered based on the applicable factors in 20 C.F.R. §404.1527(c).  SSR 96-5p, 1996 WL 374183 at *3.  However, medical opinions on case dispositive issues like these are never entitled to controlling weight under 20 C.F.R. §404.1527(c)(2).  See 20 C.F.R. §404.1527(d)(3); SSR 96-5p, 1996 WL 374183 at *2.

sources..."); 20 C.F.R. §404.1502 (defining treating source).   Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight.   20 C.F.R. §§04.1527(c)(2); see also SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention.   20 C.F.R. §404.1527(c).

At the initial level of administrative review, State agency medical and psychological consultants may act as adjudicators.   See SSR 96-5p, 1996 WL 374183 at *4.   As such, they do not express opinions; they make findings of fact that become

part of the determination.  Id.  However, 20 C.F.R. §404.1527(e) provides that at the ALJ and Appeals Council levels of the administrative review process, findings by nonexamining State agency medical and psychological consultants should be evaluated as medical opinion evidence.  As such, ALJs must consider these opinions as expert opinion evidence by nonexamining physicians and psychologists and must address these opinions in their decisions.  SSR 96-5p, 1996 WL 374183 at *6.  Opinions by State agency consultants can be given weight "only insofar as they are supported by evidence in the case record."  SSR 96-6p, 1996 WL 374180 at *2.  In appropriate circumstances, opinions from nonexamining State agency medical or psychological consultants may be entitled to greater weight than the opinions of treating or examining sources.  Id. at *3.

Furthermore, as discussed above, it is beyond dispute that, in a social security disability case, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."  Cotter, 642 F.2d at 704.  This principle applies with particular force to the opinion of a treating physician.  See 20 C.F.R. §404.1527(c)(2)("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").  "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'"  Plummer v. Apfel, 186 F.3d 422, 429

16

(3d Cir. 1999)(quoting Mason, 994 F.2d at 1066)); see also Morales v. Apfel, 225

F.3d 310, 317 (3d Cir. 2000).

## III.   Discussion

Ms. Raber's arguments, in large part, focus on the ALJ's discussion of her

lower extremity peripheral neuropathy, diabetic retinopathy, and cardiac condition.

She contends that the ALJ improperly discounted her statements concerning the

intensity of her symptoms, and the opinions of physicians that accurately accounted

for the degree of severity of her symptoms, and as a result erred at several steps of the

sequential evaluation process, including steps two, three, and five.

### A.   The ALJ's Decision Denying Ms. Raber's Claims

In her April 2013 decision denying Ms. Raber's claims, the ALJ found that Ms.

Raber met the insured status requirement of Title II of the Social Security Act through

September 30, 2013  (Admin. Tr. 15), and assessed Ms. Raber's claim at each step of

the five-step sequential evaluation process.  At step one the ALJ found that Ms. Raber

had not engaged in substantial gainful activity since March 1, 2011.  (Admin. Tr. 15).

At step two the ALJ found that Ms. Raber had the medically determinable severe

impairments of coronary artery disease status post stenting, and diabetes mellitus.

(Admin. Tr. 16).  The ALJ also found that Ms. Raber's alleged impairments of

hypercholesterolemia, hypertension, and sensorimotor polyneuropathy were

17

medically determinable but non-severe.  (Admin. Tr. 16).  At step three the ALJ found that Ms. Raber did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Admin. Tr. 16).

Between steps three and four, the ALJ assessed Ms. Raber's RFC.  After considering the record as a whole, weighing the medical opinion evidence of record, and assessing the credibility of Ms. Raber's subjective testimony, the ALJ concluded that Ms. Raber had the RFC to engage in light work as defined in 20 C.F.R. § 404.1567(b) except that Ms. Raber:

> could occasionally balance, stoop, crouch crawl, kneel, climb, but never on ladders, ropes or scaffolds; must avoid concentrated exposure to temperature extremes of cold/heat, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation; and must avoid hazards such as moving machinery and unprotected heights.

(Admin Tr. 17).

At steps four and five of the sequential evaluation process, the ALJ relied on hearing testimony from VE Kane.  VE Kane testified that Ms. Raber's past relevant work includes jobs as a certified nursing assistant and personal care assistant. (Admin. Tr. 51).  VE Kane testified that physical demands of both positions exceed the RFC assessed by the ALJ.  (Admin. Tr. 52).  Based on this testimony, the ALJ found that Ms. Raber would be unable to engage in any of her past relevant work at

step four of the sequential evaluation process.  (Admin. Tr. 21).  VE Kane also testified that, based on the ALJ's findings of fact with respect to Ms. Raber's age (closely approaching advanced), education (high school), past relevant work experience, and RFC, Ms. Raber could engage in the following representative occupations:  office helper (DOT #239.567-010), ticket sales (DOT #211.467-030), information clerk (DOT #237.367-018), hotel desk clerk (DOT #238.367-038), and customer service representative (DOT #238.367-038).  (Admin. Tr. 52).  VE Kane's testimony also reveals that the sum of number of jobs in these occupations that exist in the regional economy is 2,300.  (Admin. Tr. 52).  Based on VE Kane's testimony, the ALJ concluded that Ms. Raber was not disabled at any point during the relevant period from March 1, 2011, through April 12, 2013, because she could engage in other work that existed in significant numbers in the national economy.  (Admin. Tr. 22-23).

### B.   The ALJ's Evaluation of Ms. Raber's Credibility is Supported by Substantial Evidence

Ms. Raber argues that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ failed to explain her rationale for finding that Ms. Raber's testimony was "not entirely credible."  (Doc. 11, at 7).  She argues that the ALJ offered no plausible reasons for rejecting her testimony.  (Doc. 11, at 11).

The Commissioner contends that the ALJ adequately explained her credibility assessment. (Doc. 12, at 9-14).

Ms. Raber's objections to the sufficiency of the ALJ's credibility assessment center on the ALJ's treatment of her testimony about the symptoms of her diabetes and its underlying complications (retinopathy and peripheral neuropathy), and her coronary artery disease. The ALJ offered the following explanation when she discounted Ms. Raber's testimony:

> The claimant testified at the hearing and reported what she believed was symptomatology and medical conditions that precluded work activity. However, the medical evidence of record does not support a finding of disability. Cardiac evidence indicates that the claimant began experiencing chest discomfort in March of 2011. She was subsequently diagnosed with coronary artery disease. Thereafter, the claimant underwent two heart procedures to open blockages. Stents were also inserted to maintain blood flow. These procedures occurred in March and May 2011. After the second, the claimant reported that she was doing well and participating in multiple normal activities of daily living including cooking, cleaning, and caring for her grandchildren. The medical records documenting the success of the procedures undermine the claimant's allegation of disability. The lack of current medical records for cardiac care, do the same. More specifically, the claimant's medical records of evidence substantiating ongoing heart care cease in the summer of 2011. From that time to the present, there are no records supporting heart impairment in any way. For these reasons, the undersigned finds that the claimant's coronary artery disease, status post stenting, does not precluding the claimant from engaging in work activities.
>
> The claimant also alleges that her diabetes is disabling. The medical records of evidence do not support this conclusion. The claimant

received a diagnosis of diabetes mellitus as early as 2009.  When she began to take insulin, the claimant experienced weight gain.  Because of the weight gain, the claimant stopped taking her diabetic medication. Afterward, the claimant has consistently been tested with elevated blood sugar levels.  The medical records of evidence suggest that the claimant will suffer from increasing symptomatology of the disease, if she does not actively participate in her care.  Namely, to improve, the claimant must consistently take her insulin.  The medical records of evidence do not establish the claimant's willingness to comply.  Nevertheless, even with a high blood sugar level, no medical records of evidence support the finding that the claimant is unable to engage in work activities.

(Admin. Tr. 20-21).  Ms. Raber specifically alleges that the ALJ failed to credit her testimony about the severity of her lower extremity polyneuropathy and visual impairment due to diabetic retinopathy, and failed to properly address the limitations resulting from her cardiac condition.  After reviewing the administrative record and the ALJ's decision, we agree with the Commissioner that the ALJ's credibility assessment is sufficient.

With respect to Ms. Raber's allegations that the ALJ failed to credit her testimony concerning the severity and limiting effects of her lower extremity polyneuropathy, the ALJ noted at step two that although objective testing confirmed the existence of a sensory deficit, physical examination findings failed to demonstrate the full extent of limitation alleged.  (Admin. Tr. 16).  The ALJ noted that Ms. Raber's deep tendon reflexes and adductor hallucis proprioception were intact, and Ms. Raber did not demonstrate any abnormal sensory response during a physical

examination. Id.  The ALJ also noted that Dr. Yang Go found that Ms. Raber did not exhibit any physical abnormalities on examination, (Admin. Tr. 19-20), and that Dr. Bohn assessed that Ms. Raber sit for six hours per day, or stand/walk for six hours per day, (Admin. Tr. 20).  This evidence is a sufficient basis to discount Ms. Raber's subjective testimony that her polyneuropathy resulted in a significant erosion in her ability to sit, stand, or walk for prolonged periods.

With respect to Ms. Raber's diabetic retinopathy, the record reflects that Ms. Raber testified that this symptom affects her ability to see the television on a intermittent basis.  Ms. Raber reported that her vision blurs when her sugar is "flared up" but could not identify how frequently this occurred. (Admin. Tr. 47).  She simply reported that "it changes." Id.  Although treatment records from Dr. Masteller reflect that Ms. Raber had an eye exam and was positive for diabetic retinopathy, (Admin. Tr. 427), the record does not include records from the actual eye exam indicating the extent or severity of Ms. Raber's visual impairment.  Further, no medical source opinion suggests that Ms. Raber has any visual impairment.  Because the record is devoid of any clear objective or subjective evidence regarding the extent to which Ms. Raber's retinopathy actually affects her vision, we find that the ALJ's failure to discuss it here is harmless. "No principle of administrative law 'require[s] that we convert judicial review of agency action into a ping-pong game' in search of the

22

perfect decision." <u>Coy v. Astrue</u>, 2009 WL 2043941 at *14 (W.D.Pa. Jul. 8, 2009)(quoting <u>NLRB v. Wyman-Gordon Co.</u>, 394 U.S. 759, 766 n. 6 (1969)).  To remand for further consideration based on the evidence before us would be an idle and useless formality.

With respect to Ms. Raber's claims that the ALJ improperly discounted Ms. Raber's testimony that her cardiac condition has resulted in fatigue upon exertion, we similarly find that the ALJ's assessment is supported by substantial evidence. Although Ms. Raber's testimony does support the fact that following the stent procedure she has experienced fatigue on physical exertion, and that this fatigue has had an impact on the way she accomplishes daily activities, the record also establishes that this fatigue was attributed to the side-effects of Ms. Raber's medications.  In discounting this testimony, the ALJ noted that the available records do not reflect any ongoing cardiac care after Ms. Raber's medications were adjusted during a July 2011 examination with CRNP Shields.  During the hearing in February 2013, it was noted that the records before the ALJ were only current to September 2011 – the date of Ms. Raber's consultative examination.  (Admin. Tr. 55).  The record was held open to allow Ms. Raber to submit additional evidence, but none was submitted.  Furthermore, Dr. Yang Go noted that, although Ms. Raber complained of

widespread musculoskeletal pain and weakness, there was no pain or weakness noted on active examination.  (Admin. Tr. 449-50).

Thus, Ms. Raber did not supplement the record on this important issue despite being offered an opportunity to do so.  Accordingly, in the absence of further evidence, for the foregoing reasons we find that the ALJ's assessment of Ms. Raber's credibility is supported by substantial evidence.

### C.     The ALJ's Evaluation of the Medical Opinion Evidence is In Accordance with the Regulations, and is Supported by Substantial Evidence

In her decision, the ALJ accorded "little" weight to Dr. Yang Go's medical source statement.  The ALJ explained that:

> The opinion of Dr. Yang Go which essentially assigns the claimant a sedentary residual functional capacity with restrictions, is given little weight.  This opinion is inconsistent with the claimant's longitudinal clinical treatment history and with her activities of daily living.  Rather appears to rely more on her subjective complaints at the evaluation, that were musculoskeletal complaints rather than her exam and laboratory findings that were essentially normal including normal heart sounds and ejection fraction post stenting.  Furthermore the undersigned notes that her neuromuscular, extremities and back examination findings were within normal limits.

(Admin. Tr. 19).  The ALJ accorded no weight to Dr. Roy's February 2013 letter.

She explained that:

> On February 8, 2013, Uzzal Roy, MD provided a letter indicating that the claimant can only do sedentary work because of her medical

condition (Exhibit 8F), after three months of treating the claimant (Hearing Testimony).  Assuming that this conclusory statement relates to neuropathic limitations, no weight is given to this opinion, as it is not substantiated by other objective medical evidence.  More specifically, even though Dr. Roy cited neurological testing that found lower extremity neuropathy consistent with her diabetic condition, other examinations revealed no range of motion limitations and exertional limitations that were inconsistent with the sedentary limitation.  There is simple no objective medical evidence in the record that supports this conclusion.  Additionally, the nonspecific assertion of disability, with no citation as to the medical basis for this finding, is problematic.  Assuming that this conclusory statement relates to the claimant's heart condition, the objective medical evidence and absence of ongoing cardiac treatment belies this conclusion.

(Admin. Tr. 20).  The ALJ accorded "great" weight to Bohn's October 2011 RFC assessment because the doctor's opinion that Ms. Raber was limited to a range of light work was "consistent with the claimant's longitudinal clinical treatment history and the claimant's activities of daily living."  (Admin. Tr. 20).

Ms. Raber argues that the ALJ gave insufficient weight to the medical opinions by Doctors Yang Go and Roy, and too much weight to the RFC assessment by Dr. Bohn.  Her primary objection to the ALJ's treatment of this evidence is that the ALJ "offered no plausible reasons" for the weight accorded to these opinion.  (Doc. 11, at 11).  We construe this statement as arguments that the ALJ failed to provide sufficient explanation for his findings, and that the ALJ failed to cite a proper basis for discounting the opinions of Dr. Yang Go and Dr. Roy.

At the outset, we note that the medical opinions in this case conflict with one-another.  Ms. Raber accurately characterized the opinions of Doctors Roy and Yang Go as indicating that she would be capable of no more than sedentary work, while Dr. Bohn opined that Ms. Raber could engage in light work.  As such, the ALJ was not only entitled, but required to choose between them.  In such circumstances, the Courts have imposed upon the ALJ some responsibility in explaining his or her choice.  This responsibility, however, is merely to provide "an adequate basis so that the reviewing court can determine whether the administrative decision is based on substantial evidence."  Cotter v. Harris, 642 F.2d at 706.  In this case, we find that the ALJ has met this burden, and has provided sufficient explanation of her findings to permit this Court to assess whether the ALJ's findings were based on a proper application of the controlling legal standards, and were based on substantial evidence.

Next we turn our attention to the issue of whether the ALJ's explanation reveals that her findings were based on a proper application of the law, and are supported by substantial evidence.  In this case we conclude that they were.

When no opinion of record is entitled to controlling weight, all of the medical opinions are evaluated and weighed under the same standard.  This standard accounts for numerous factors, including the extent to which a source presented relevant evidence to support the opinion, and the extent to which it is consistent with the

record as a whole – including the opining source's own examination records, or when a medical opinion is based on unsubstantiated subjective statements by the claimant. 20 C.F.R. §§ 404.1527(c)(3), 404.1527(c)(4); see e.g. Hall v. Comm'r of Soc. Sec., 218 F.App'x 212, 215 (3d Cir. 2007)(affirming an ALJ's decision to give little weight to a treating physician's reports where the ALJ specifically noted "internal inconsistencies in the various reports and treatment notes" from the opining source); Morris v. Barnhart, 78 F.App'x 820, 824-25 (3d Cir. 2003)("An ALJ may discredit a physician's opinion on disability that was premised largely on the claimant's own accounts of her symptoms and limitations when the claimant's complaints are properly discounted.").

The ALJ explained that Dr. Yang Go's medical source statement was both internally inconsistent, and appeared to rely on Ms. Raber's subjective statements rather than his own examination findings.  This is a permissible basis to discount a medical source statement, and is supported by substantial evidence in this case.  Dr. Yang Go's examination report reflects that although Ms. Raber complained of widespread musculoskeletal pain of such severity that it affected her range of motion, and resulted in easy fatigability, and muscle weakness.  However, on examination her extremities were normal, her range of motion was normal in all areas tested, she had full strength, and intact reflexes.  Dr. Yang also noted that Ms. Raber's most recent

27

ECG was within normal limits.  Further, contemporaneous treatment records from CRNP Shields reflect that Ms. Raber expressly denied exertional chest pain, and includes no report of easy fatigability.  (Admin. Tr. 428).  Ms. Raber's muscle aches were believed to be the result of her medications, which were adjusted in July 2011 in an attempt to reduce her medication-induced muscle aches.

The ALJ discounted Dr. Roy's letter because the doctor did not provide sufficient evidence or detail to support his opinion.  The doctor did not make any attempt to explain the basis for his assessment that Ms. Raber was limited to sedentary work, or provide any evidence documenting Ms. Raber's symptoms or limitations in a clinical setting.  Although the doctor appeared to append the result of an October 2012 nerve conduction study, the study itself provides little insight into the severity of Ms. Raber's symptoms.  20 C.F.R. §404.1527(c)(3) provides that "the more a source presents relevant evidence to support an opinion, . . . the more weight we will give that opinion."  As such, we find that the ALJ's decision to discount Dr. Roy's 2013 letter is in accordance with the regulations, and is supported by substantial evidence.

Last, the ALJ explained that she credited Dr. Bohn's RFC assessment because it was more consistent with the benign findings on recent examination, including Dr. Yang Go's remarks that Ms. Raber was able to get up and ambulate normally, and his

28

observation that Ms. Raber had normal reflexes.  This assessment is supported by the record.  Further, the ALJ accurately noted that the limited records available that relate to the relevant period simply do not substantiate the degree of symptom severity alleged. SSR 96-6p provides that the opinions of State agency consultants like Dr. Bohn are given weight insofar as they are supported by and consistent with the evidence in the case record.  1996 WL 374180 at *2.  As such, we find that the ALJ cited a valid basis to credit this opinion, and that her findings of fact regarding the consistency of this opinion with the record as a whole are supported by substantial evidence.[2]

---

[2]Furthermore, to the extent that Ms. Raber also makes passing allegations of error with respect to the ALJ's findings at steps two and three of the sequential evaluation process, we note that these allegations are premised on her claim that the ALJ erred in his evaluation of Ms. Raber's testimony and the medical opinion evidence of record.  Since we have concluded that these claims were unfounded, and substantial evidence supported the ALJ's determinations regarding credibility and weight to be afforded to conflicting medical evidence, we need no further address these passing complaints.

## IV.    Conclusion

Based on the foregoing, the Commissioner's decision is **affirmed**, and Ms.

Raber's requests for relief is **denied**.

An appropriate order shall follow.

_**S/ Martin C. Carlson**_
Martin C. Carlson
United States Magistrate Judge

Dated: March 16, 2016